Chief Judge Pryor, may it please the Court, in Williams v. Aguirre in 2020, this Court said, and I quote, We have never wavered about the prohibition of misstatements in warrant applications. Our prohibition of intentional material misstatements in warrant applications has long been a cornerstone of this Court's jurisprudence on the validity of warrant-based seizures. In the light of this uncontroverted and well-established rule, we readily conclude that every reasonable official would interpret our precedents to establish that intentional material misstatements in warrant applications violate the Constitution. Counsel, that helps you a lot, I think, and maybe gets you over the hump with regard to qualified immunity and official immunity for the police officers. Correct. I think that doesn't get you where you need to go for absolute immunity and prosecutorial immunity, because the Supreme Court and our Court have made clear that the presentation of evidence, even false or fraudulent evidence or made-up evidence, in the course of seeking a warrant is something that is done in connection with or conjunction with prosecutorial duties and judicial action and, therefore, is entitled to that sort of absolute immunity. Do I have that right? You have that right as a correct statement of law, but the United States Supreme Court and this Court have also made equally clear that the creation of false evidence advising police officers on the legality of conduct, planning and directing a raid, and participating in the preparation of an affidavit presented to the court is all pre-prosecutorial conduct that both this Court and the United States Supreme Court has said is not entitled to prosecutorial immunity. The issue is, you're right, as a matter of law as well, Counsel, but the issue as I see it is the connection between those allegations and the actual claims that you are making. So, for example, in a Frank's claim, which is essentially what your claim is in count two, I think you would agree, the claim is that false statements were made in the seizure application, in the civil RICO injunction, in all of those judicial process. Whatever happened, if the police officers, let me ask it this way, if the police officers, if the allegations were they directed this complete unconstitutional raid, there was no process at all, they just, the prosecutors told the officers, I don't like these guys, I want to make money off of them, go rip them off. And that was it. You wouldn't have a Frank's claim, right? I think I would have a claim, yeah, I do think that I would have a claim under the Constitution. You may, I'm asking, answer my question. Frank's claim. I may not have a Frank's claim. You wouldn't, because there would be no process. Right. That's right. So there has to be a connection between the allegations of investigative or pre-prosecutorial things and the claim. There has to be identity between those two. If they're not, you're right that these things could be actionable. The question is, are they actionable as you actually allege them in your complaint? So I want to go to count two. Sure. Because the briefs talk a lot in vagaries, and I really want to get to the counts. Okay. In count two, you allege that false statements were made to the court in order to procure the warrants. Correct. That's where you started with Williams, right? That's where you started, so that's where I'm going. A prosecutor, as I understand it, from burns and heart, is immune for the presentation of evidence to a court in obtaining judicial process, correct? Correct. So I just, I'm having trouble given that, given that claim, not the allegations, but that claim of finding how you overcome absolute immunity. I think you have a really good case for the officers on qualified immunity. Sure. And I think that what we were trying to allege in the complaint, and what I think that we do allege, and again, the Second Amendment complaint is what governs here, not anything outside it. But we say that prior to the presentation to the judge, to the magistrate judge for the warrants, that the Cook and Lambros, the DA and the special DA, directed the illegal raid based upon false premises. That's paragraph 18. We say that they deliberately participated with these officers in fabricating, inculpating evidence against the Bartlett's. You don't allege any specific facts, though, from which we could reasonably infer, it seems to me, that they fabricated evidence. I think that we do, Your Honor. And you certainly do say that the officers lied about the machines being illegal when they knew, in fact, they were not, right? Yes, sir. And that's why I'm with Judge Luck on the officers and qualified immunity. In fact, to just piggyback right off of what the Chief said, the way you allege it is they caused these false statements to be made. You have to allege it that way because this is not a case like, for instance, the Kalina or Kamina with one of the Supreme Court cases where the DA himself or herself is the testifying witness. Right. And there, if the DA, him or herself, makes the false statement, then the court has said, well, you're in it, as anyone else is. And again, we cite to the Reeves case just because it's very similar factually out of the Sixth Circuit. But what happened here and what we allege in the complaint is that Mike Lambros and David Cook, the DAs, this was not their first rodeo. They had established a pattern of going and raiding these establishments based upon false allegations, bringing charges of illegal conduct, at least arrests, not indictments. They would then seize the assets of these persons and they would say, we'll let you out of this as long as you enter a settlement agreement where I can get some money and we won't prosecute you. And this is a pattern that they had done prior to the Bartlett case. Counsel, I understand exactly what you're alleging here. It's clear as day, both from what's in the complaint and in your brief. Right. My question is, how do we link that to an actual constitutional claim? So count two deals with Franks. You look puzzled. I do. I am. Right. But not everything that is shocking or outrageous violates the Constitution of the United States. So this is really important. No, and it is very important. And it does. I mean, what we are alleging and what I believe that the facts will show is that is that David Cook and Michael Lambros met with these officers, that they told them that the payment of cash for these machines make it an illegal act, that they should go and set up a sting, that they should arrest these people based upon what they advise them to do, and that they furthermore, this is what they say. Now, you look in Ms. Bickford's brief and Ms. Bickford says, yeah, you're right. Well, that is David. I know that that's outside. We're not using Ms. Bickford's brief against anybody as you did in your response and reply. My question is this. Again, I want to go back to the claims. Sure. So we've discussed the Franks claim. The first claim, as I understand it, is a due process fabrication of evidence claim, correct? Yes. Okay. Show me where there is clearly established law where we or the Supreme Court or the Georgia Court have said the fabrication of evidence alone by itself violates the due process clause. I mean, I take that to be, I mean, I may be wrong, but I take that, William says that, I take that to mean holders. Okay, so William says it in the context of the Fourth Amendment. Of the Fourth Amendment. In a warrant. Sure. So that wasn't my question. So due process clause was part of my question and fabrication by itself. Yeah, I think fabrication by itself and then makes its way into the Warren application. So the Warren application gets you the Franks part and the Fourth Amendment part. So there is clear that that states a claim, whether there's an immunity is a separate issue, but it clearly states a claim. Right. My question is on count one, where you allege fabrication of evidence. Right. Where, show me where it's clearly established by the U.S. Supreme Court, the 11th Circuit Court of Appeals or the Georgia Supreme Court that the fabrication of evidence by itself, it violates due process. Well, I believe that the cases we cite are Holder, 2011, Burns out of the U.S. Supreme Court in 1991. Burns is an official immunity case. Right. But that's not a, that's not a due process fabrication of evidence. But it's recognizing the constitutional violation. I mean, I think that the cases, and we must cite about 20 of them in our brief, that the, that where a prosecutor participates in the fabrication of evidence, when the prosecutor lies, it is a bedrock principle of the Constitution that that is pre-prosecutorial conduct that does not supply them with immunity. I agree. Okay. That's the immunity question. That's not the question I'm asking. The question I'm asking is, show me where in those three courts I mentioned, it is clearly established as a matter of law at the time, so this is 2015, that it, that fabricating evidence by itself violates the due process clause. And I thought that, I thought that we had done that in our brief, Your Honor. And I think that the, I mean, again, the cases that I cite all say that the fabrication of evidence in and of itself violates the Constitution. And I don't think they say that. I think what they say is, and what I want you to do is sit down and rebuttal and then come back. Yeah. But what those cases go to is the immunity question that you pointed out. And you may be right that pre-judicial process fabrication that's participated in by prosecutors overcomes the prosecutorial immunity. Okay. But that's separate and apart from, is the claim clearly established at that time? Because I have to tell you, every case I've seen says fabrication of evidence that is I want to be educated of whether fabrication of evidence by itself, without anything else, is itself a due process violation. Okay. And you're asking fabrication of evidence that doesn't make its way into a warrant that leads to an arrest? So if it makes a way to warrant, we know it's a Frank's issue. It's a Williams case. So if I just make it up. It's a Fourth Amendment issue, not a Fifth Amendment issue. Okay. Yes. All right. I'm agreeing with you then. It's a Fourth Amendment issue, not a Fifth Amendment issue. Yes. And I think that to me is problematic for count one, because count one alleges a due process. Okay. I'll concede that on count one, and my arguments are primarily directed to count two. I'm sorry. Okay. That was where my confusion was, Judge, and I apologize. Okay. Now let's get to count three. Sure. So that's First Amendment retaliation.  There, as I allege the allegations there in the Second Amendment complaint, it's clear to me, it seems, that they are directed at the institution of criminal proceedings through the filing of an indictment. That, to me, seems classic. Prosecutorial immunity. I think count three is barred. I think that count one is probably not there. The judge didn't, there really wasn't much of a discussion on count three. But I think count three is gone. I think that count two is viable. I think count five is viable. Four, five, six, seven, and eight are all viable. I'm going to agree with you about one, and I'm going to agree with you about three. Well, let me ask you about, I think it's count five is the conspiracy count. Oh, that's out too. Count five is out too. Yes. I feel like I'm in the district court doing what the things the district court should do in whittling down complaints. The reason I didn't focus on this is it wasn't part of the discussion below. I mean, almost all of our discussion relates to counts two. I'm going to agree with you also on the 1985 conspiracy is gone. So, yes, the reason I'm not talking about that is it wasn't really part of the arguments. But I agree. But counsel, we have an order. You've appealed the entire order. Yes. Your brief focuses on every issue. You've been asked for more time to be able to talk about all this with us today. Whittling these downs and briefs, you know. Art of lawyering. I'll be done, Chief. Thank you. It is. It is. But I will sit down. But again, I think that we're focused on the other counts, the three that you mentioned, I agree with. Thank you. You've saved three minutes for rebuttal. Let's hear from Mr. Zachman. You know, if I'm representing Cook and Lambros, I don't know that I've got a lot to say based on what I've heard this morning. But we'll see. Well, good morning, Your Honors. Good morning. May it please the Court. My name is Jeff Zachman. I represent David Cook and I may not have a lot to say because the clear law in this circuit is that Mr. Cook and Mr. Lambros are entitled to absolute immunity. I will say that the defendants below, and I'll refer to them as that for the avoidance of confusion, have split their time. I am here and will primarily address the absolute immunity question. My colleague at counsel table, Mr. Kingma, who represents Mr. Lambros, will address qualified immunity as to the prosecutors and counsel for Mrs. Welsh and Bickford. Can you address for me the intentional, state intentional infliction of emotional distress count? Because there, the allegations are that the defendants themselves conspired to orchestrate illegal arrests and seizures of property based on the false charges, based on the false charges, and then realleges everything that came before it, which is that the raid was directed by the prosecutors, that they directed the agents to go and to target them, and this was done based on a pattern and practice and for financial motives. That seems pretty close to the line of prejudicial process conduct. Can you help me out with that one? I can, Your Honor, and I'll address it two ways. The first is, what's actually alleged in the second amended complaint is one word, and that word is directed, and that word is conclusory. And it's conclusory under this court's precedence. In Gee, and in Reberg, and in Card, specifically in Gee, there were significantly more allegations than what's alleged here about pre-indictment conduct. And taking that one word out, we're really just left with the filing and pursuit of the complaint. That is correct, and there are no facts alleged in the complaint. I believe that counsel today described the facts as that the prosecutors met with these officers, told them to go lie, told them to set up a sting. None of those facts are in the complaint, Your Honor. And the Reeves case, besides the fact that it's from the Sixth Circuit, is entirely distinguishable because there were those facts in Reeves. There are no facts here. The second question, or the second reason I would give, is that this court's precedence on absolute immunity state that, or bar that intentional infliction of emotional distress claim if the distress arose from prosecutorial conduct. And as Your Honor mentioned, here, the well-plead allegations indicate that they do. I'll otherwise reserve some of my time for, some of the time for my colleagues. If they orchestrate the arrest though, and direct the raid, and insist on some of this conduct, that would be prior to or before the process happened here. In other words, if this was part of a pattern and practice of the prosecutors to target the COAM companies or businesses in order to extort money from them for the purpose of setting up these civil RICOs and to get a prosecutorial slush fund, and it was done to direct, you target these folks, and it was orchestrated based on knowledge, based on knowingly false charges, wouldn't that be prior to, in other words, not seeking a warrant and not prosecuting, but doing something before those things? I don't think so, Your Honor. I think this Court's precedent in Rehberg talks about the decision to initiate charges. Even when it's done with malice of forethought, even when it's done for personal gain, even when, and in Rehberg the allegations there, and they were factual, significantly more factual than these allegations here, where a prosecutor gets together and conspires with an investigator to make up a completely false story, basically against one of the prosecutor's political enemies, or an enemy of the prosecutor's political friend, and then presents that and has that criminal defendant arrested, that is subject to absolute immunity. And with that, I will, my time is up. Thank you, Your Honor. Thank you. Mr. Kingman. May it please the Court. I'm Joe Kingman. I'm here on behalf of Michael Lambros. I'm going to speak briefly about the qualified immunity defense. I believe this Court, in the Leslie v. Hancock decision, set forth a high hurdle, which I don't believe that plaintiffs in this case are able to clear. And the standard is Mr. Lambros' conduct must have been such that every reasonably objective government official would know that the conduct violated federal law. Counsel, that's not a winning argument. At least it has to count to. I mean, Williams is clear as day, but Williams cites cases going all the way back to Franks itself, which have set out that it clearly established that it violates the Fourth Amendment to make false and material false statements or omissions in search warrants or arrest affidavits. So that would be true of any government official. I think the winner for you or where you need to win, I think, is on the prosecutorial immunity. Yes, Your Honor. And I agree that we should win on the prosecutorial immunity. And I would agree that if there were specific allegations made in the complaint that match the standard in Williams, that qualified immunity would be a loser. But I don't believe that the allegations made in the complaint rise to that level. The district court found that it is. It did. And it's I'm not saying it's the it's the it's a model complaint. But they do set out specific statements that went to support specifically the two big ones are that they the the the targets here paid money for a win, which you're not supposed to do, and that there were wins without any skill being done, without any any activity by the player. And that would have turned it into a gambling machine. And what he's saying is the video didn't show that. And that is completely false. And they knew that was false. That seems to be pretty specific and and would get you there. And that's the material information that would have gotten a warrant here. If we look at the court's decision in State versus Bartlett that addressed the underlying criminal case, their holding includes a discussion of the evidence that you just discussed. And what it said was that the investigator believed Ms. Welch. Here's the problem, though. Bartlett is talking about things that happen years later, testimony that happened years later in a trial that happened years later. We're focused on, as I understand it, is does the Second Amendment complaint sufficiently allege these facts? And are you entitled to qualified immunity if it does state a claim? That's what you're arguing here. And it seems to me that there are at least allegations here of false statements. Now, whether they were actually false later on is a separate question. But it seems to me that there's allegations of false statements that are material and that Williams and other cases tell us that anyone would know that that would that violates the Fourth Amendment. Judge, I may be missing your point here, but my understanding, my reading of State versus Bartlett had Ms. Welch testifying that back at the time when she walked into the store and observed what she observed, she observed two things. She observed what she thought was a win and she without any skill and she observed what she thought was another customer winning without any skill. And the Bartlett's put up an expert and said, yeah, that's what she saw. But what she saw wasn't really a win. It was a credit for a free game. Let me ask you one thing before you finish. Yes. Which is I want to make sure we get something straight. What Williams is talking about is a seizure of a person pursuant to legal process as opposed to seizure of property, a search warrant. I don't think that Williams is speaking about seizure of a person of property, a search warrant. And if it's a search warrant, as long as there's probable cause, even if it's not the same crime specified in the warrant application, if there is probable cause of another crime, the cash payouts, for example, then the search warrant was supported by probable cause. Am I right about that? I believe that's correct, Judge. Seeing my time has expired, I will sit. Thank you. Ms. Clay. May it please the Court? My name is Frances Clay. I'm here representing Defendant Welch, who was the Centerville police officer who was tasked with going undercover at Captain Jack's to record the games. Have you looked at the problems? The issue for Defendant Welch is whether she's entitled to qualified immunity based on the allegations of the complaint. As you know, in the Court's order denying plaintiffs' motion to file a third amended complaint, the Court considered the case of State v. Bartlett and the criminal conviction and said there was probable cause and that the allegations in the complaint were insufficient to overcome the qualified immunity of all of the defendants, including Defendant Welch and Defendant Bickford. As you pointed out, Your Honor, Williams does go towards, and is it Aguirre? Is that how that's pronounced? I've called it Aguirre. I mean, don't ask me. Well, in Williams, it did deal with the seizure of a person as opposed to property. And the complaint— We have an arrest warrant for a seizure here, though. We have an arrest warrant in this case, don't we? Eventually, there is. No, no, no, no. He was arrested on a warrant. There were three things that I thought happened. There was a search warrant to search the business and the house. Yes. There was the civil recode to put a trustee and we're taking all the assets. Right. And there was an arrest warrant. He was arrested. Now, he wasn't indicted until much later. Right. But am I wrong that there was an arrest warrant, at least as alleged in the second— I mean, there had to have been because he ended up being tried. That's right. Exactly. Well, he was arrested that day and bonded out, right? He'd been tried, but based on the indictment. Yes. Was he seized, detained? I believe he ended up with an ankle monitor. So, but— Was that pursuant to an arrest warrant, the indictment? Your Honor, my person was so little involved in this, I am not exactly sure. Okay. All that Defendant Welch did was go in and record the video games. And then she had the video, which, you know, the complaint doesn't even specify what it is she supposedly lied about or what it is she supposedly fabricated as far as evidence. It's clear from the criminal trial there was a video that showed people getting paid cash payouts and there is a video that showed the game appearing to award a win without a nudge. So, I don't know what they're saying was fabricated. If they think that video was fabricated, then it should have been excluded from the criminal trial and clearly it wasn't. Your Honor, counsel, here's paragraph 11 of the complaint, that second amendment complaint. Quote, defendants falsely and deliberately represented evidence and legal claims in order to secure warrants and warrants, plural, and injunctions that resulted in the arrest of the Bartlett's and the seizure of their assets and the assets of Captain Jack's. Paragraph 20 states on May 15, May 5, 2015, which is the date of the raid, the Bartlett's were arrested on the same false allegations, their arrest deprived them of their liberty, restricted travel, etc., etc. But Your Honor, my question is, what exactly was the false allegation? I think what they're saying is the false allegation was that... I want to pin down, there was, at least as alleged, a process that resulted in their arrest that day. Exactly. Which is Williams. Which, yes, is Williams, which would be a malicious prosecution claim, which the court denied their motion to amend. The fourth amendment claim. Yes, but... We just use malicious prosecution as a tort analog. Right, exactly. It's not a malicious prosecution claim. Thank you, Your Honor. But with this case, if they're alleging that the false statement or false evidence was this legal conclusion that a game allowing a win without a nudge... Counsel, I agree with you that at least part of their complaint goes to that. But there is also part of the complaint, it seems to me, that says explicitly the warrants were supported by two facts that had legal implications. One is the payment of money that you weren't supposed to pay on these things because you're supposed to get prizes. And that you got to... There was at least some wins without any skill by the player, which makes it a gambling machine and not a COAM, right? Yes, Your Honor, and that evidence was proven, was admitted into trial. I understand, but we're only... This is the second amended complaint, not the trial evidence. And it's alleged that those statements were false and wrong, and they knew they were wrong when they made them, and the video didn't show it. Now, it may be that all of that was proven at trial to be the case. I'm not saying that. I understand. But at least as alleged, doesn't that allege a valid Frank's claim, a valid Fourth Amendment illegal warrant claim? Your Honor, it would if this were not dealing with qualified immunity, which needs to be addressed at the earliest possible point. And we have a conviction based on this evidence, which was admitted and proven at trial. I know, but we... And the fact that we have that conviction, I think... But counsel, we've said, and is it okay if I go over to you? We've said, I've thought that, and this is different than Georgia law, that that's not dispositive. A conviction in a 1983 case is not dispositive because a jury in a 1983 case could discredit all of that same evidence that the Georgia jury heard and find it to be completely perjured and false. And so, one, it's evidence, but it's certainly not dispositive of the claim. I mean, we've said that at least in three cases that I can say. Well, unless there was evidence or allegations, I guess, of perjury, fraud, which, again, the allegations here are very vague because they're not saying what exactly was the perjury or what exactly was the fraud because the evidence, you know, the video was admitted at trial. It was not excluded from trial. That's where it should have been excluded if it was fabricated evidence. And the legal conclusion was run by two attorneys, an independent magistrate judge, a trial judge who denied a directed verdict, and a jury who actually convicted this person. How could an officer like Defendant Welch be expected to know that that legal conclusion was improper when none of the legal technicians in the case did? Thank you, Your Honor. Thank you. Mr. Benowitz, you've saved three minutes. Oh, OIPOP College trials. Mr. Appell. Morning. May it please the Court. I represent Defendant Bickford in this matter. I'll address one of the issues that we are talking about that I think the other attorneys haven't gone over, and that is the consideration of the actual affidavit. That affidavit was obviously incorporated by reference in the complaint on numerous occasions. And the affidavit, from what I can tell from the Court's order, was not addressed in the denial of the motion for judgment on the pleadings. Plaintiffs argued that if the Court was going to consider matters outside the pleadings, had to convert that to a motion for summary judgment, give notice, and allow the parties to supplement with pertinent information. But under the incorporation doctrine, that motion, the affidavit, should be considered. We attached it to our motion. It's in the record. It's in tab number three, the document that was filed. And, in fact, that affidavit is the best evidence of what Defendant Bickford knew at the time of the search warrants. And that affidavit specifically makes reference to the payment of cash to customers, and specifically to the undercover officer. It makes reference to, how does that help you, though, for a Frank's claim? In other words, the claim is based on the fact that the statements are false. So you're right that if that wasn't there, that would be incorporated into the complaint, and we would assume the truth of that. But I don't see how that helps you for count two. Can you explain that to me? Well, the affidavit is, I mean, again, the affidavit was, it makes reference to the specific gambling charges, which Mr. Bartlett was later convicted on. Again, I know you made reference to it may not be dispositive, but there was no, it wasn't excluded. That testimony came in at the criminal trial. And it wasn't disputed that that happened. That's not what I understand the false fabricated evidence is. I understand what the false fabricated evidence is. They said that those things converted them into illegal gambling machines. Not that, not that the payments were not made. And as I understand that the payments were being made by the employees of Captain Jack's, your adversaries made much of the fact that there's, that there's been no showing that either of the Bartlett's ever made a cash payout to anyone. But that doesn't, that doesn't seem to me to cut it. If the employees were making it out, making payments out. Well, but in addition, in the affidavit, it also makes reference that Mr. Bartlett was seen gathering money from the machine, $2,500. Counselor, looking at paragraph 21 of the second amended complaint, documentary 97, quote, as to the warrants and seizure of the plaintiff's property and the civil RICO action, defendants knowingly and falsely represented plaintiffs that violated Georgia RICO Act and had committed specific acts. Specifically, defendants contend that plaintiffs were operating illegal gambling machines, were making cash payments to players, falsely reported winnings, and were engaged in money laundering. At the times they raided Captain Jack's, arrested the Bartlett's and filed that action, defendants knew they had no evidence of any of these alleged predicate acts. I mean, that's, that, isn't that a statement of falsity? It both says it's false and that they had no evidence. And then later on, it says that there's not on the video what was claimed to be on the video. I don't understand why that's. I think that's where you look at the affidavit. That's not in her affidavit. That's not what her affidavit was based on. She doesn't say in her affidavit, falsely reported winnings to Department of Revenue, was engaged in money laundering. She does say cash payments to players, right? She does say cash payments to players. And that they were operating illegal gambling machines because they, they won without any skill, player skill? Correct. Well, that's what she says. Right? Yeah. And they're saying that, that they knew for a fact they had no evidence of that. That was her conclusory statement to make. I mean, she. How much more, how much more specific do you need to be? They said this happened. It didn't, in fact, happen. I understand your point, Your Honor. Thank you, counsel. Thank you. Okay. Mr. Anowitz, three minutes. Thank you, Your Honor. In Holden v. Stitcher, this court said that prosecutors do not receive absolute immunity for giving legal advice to police when a prosecutor guides police rather than where a prosecutor prepares his or her own case. In paragraphs 18, 21, 64, 56, 23, 47, 63, 65, 76, 11, 18, 21 to 23, we say that prosecutors Cook and Lambros did exactly that. Well, counsel, again, it's. Yes. We're having the problem that we had at the beginning of your last argument, which is, I understand that that could overcome qualified or absolute or prosecutorial immunity. Right. That's not the question, or at least not the question I'm having right now. Sure. The question I'm having is, how does that connect to the claims you actually bring? In other words, if they had advised the police to do something completely illegal. Right. And there was no warrant ever, you could not bring count two, right? If there was no warrant ever, yes. Right. There has to be a connection between those things. And I just, I've seen the connection maybe that I'm not articulating is that they got together with the police. They fabricated the evidence. And again, the payment of cash is a ruse because what they were trying to do is they knew that that didn't fall under make a RICO predicate. So they were saying, listen, you tell them that the games are illegal for these reasons, because we know that simple cash payments don't qualify to make a RICO predicate. So I can't seize their stuff, which to get to Judge Pryor's earlier question. Yes, there was a, they were arrested and their stuff was seized. So in violation of the Fourth Amendment. So they created this fiction in order with the prosecutors with the police officers created the fiction and then Bickford signed the affidavit that was presented to the judge that allowed the seizure of the Bartlett's persons and the seizure of their properties. And I think that this, the court's case law makes clear that that participation is not a prosecutorial function and that it is clearly established that engaging in such behavior that ultimately leads to this search, to the illegal search and seizure is actionable under the Constitution. And with regard to the jury verdict aspect of it, I think it's important to say, number one, no, no verdict against Lee Bartlett. Number two is that with regard to the jury verdict, the jury found no RICO violation. Again, that's the driver here. They found no RICO violation. Accordingly, no tax violation, no money laundering violation. And with regard to pay, there were cash payouts. There were cash payouts. There were convictions for that, right? No, no, there were not. The reason that there was a conviction and this was the whole issue is that what the, what the, what the DA's are doing, and they did it as recently as a month ago, is they say the cash payments convert these machines to illegal gambling devices and accordingly you fall under the gambling statute. That's just made up. Because. What were the convictions? Commercial gambling, possessing gambling equipment, and keeping a gambling place. Exactly. But what the Court of Appeals and Bartlett said is exactly what the 11th, sorry, is exactly what the statute says, is that the payment of cash is not, you cannot have a gambling conviction based upon the payment of cash. And that's why Reeves is instructed because Reeves says if I sell CBD, it's not the sale of pot. That's a misdemeanor of a high and aggravated nature. No, the selling of the, yes, but that's not what they were ultimately, they seized the property based upon RICO. It is a crime though. It is a crime, but it is not a predicate RICO act. Okay. Okay. Thank you, Your Honor. Thank you. Okay.